MICHAEL BAILEY
United States Attorney
District of Arizona
MARK J. WENKER
Assistant United States Attorney
Arizona State Bar No 018187
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Mark.Wenker@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Real Property Located at 12006 N. Oakhurst Way, Scottsdale, Arizona 85254, titled in the name of Dale L. Hipes and Kathryn L. Hipes, APN: 167-79-149,<br><br>　　　　　Defendant *In Rem*. | **VERIFIED COMPLAINT FOR FORFEITURE IN REM** |

　　　　Plaintiff, United States of America, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"):

## NATURE OF THE ACTION

　　　　1.　This is a civil action *in rem*, brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of property, real or personal, which constitutes or is derived from proceeds traceable to a violation of a specified unlawful activity, including but not limited to, wire fraud, 18 U.S.C. § 1343.

　　　　2.　This is a civil action in rem, brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(A) for the forfeiture of property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957.

## THE DEFENDANT *IN REM*

3. The defendant real property located at 12006 North Oakhurst Way, Scottsdale, Arizona 85254, titled in the name of Dale L. Hipes and Kathryn L. Hipes, and more specifically described as Lot 113, CENTURY CLUB ESTATES, according to Book 75 of Maps, page 49, Records of Maricopa County, Arizona. APN: 167-79-149, hereinafter, (the "defendant property").

## JURISDICTION AND VENUE

4. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and an action for forfeiture under 28 U.S.C. § 1355(a).

5. Venue and Jurisdiction in Arizona is based upon 21 U.S.C. § 881(j), 28 U.S.C. § 1355(b) and § 1395 based upon acts and omissions occurring in the District of Arizona giving rise to this forfeiture action. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345; 1355; and 18 U.S.C. § 981(h), because the defendant is located in this district.

## FACTS

*Purchase history of 12006 N. Oakhurst Way, Scottsdale, Arizona*

6. On June 29, 2020, Dale L. Hipes ("Dale Hipes") and Kathryn L. Hipes ("Kathryn Hipes") purchased the defendant property for $2,050,000.00, from Philip J. Lyng and Kathy K. Lyng, Trustees of the Philip J. Lyng and Kathy K. Lyng Revocable Trust dated August 12, 2003.

7. The Affidavit of Property Value recorded with the Maricopa County Recorder's Office regarding the purchase of defendant property listed as 12006 N. Oakhurst Way, Scottsdale, Arizona 85254, reflected the following information:

a. Name and Address of Buyer: Dale L. Hipes and Kathryn L. Hipes, 12006 N. Oakhurst Way, Scottsdale, AZ 85254.

b. Name and Address of Seller: Philip J. Lyng and Kathy K. Lyng Revocable Trust dated August 12, 2003.

c. Address of Property: 12006 N. Oakhurst Way, Scottsdale, Arizona 85254.

      d. Settlement Agent: Pioneer Title Agency, Inc.

      e. Place of Settlement:  Pioneer Title Agency, Inc.

      f. Settlement Date: June 29, 2020

      g. Sale Price:  $2,050,000.00.

      h. Down Payment:  $2,050,000.00.

      i. Affidavit of Property Value signed by Dale L. Hipes as buyer.

8. On or about June 4, 2020, a wire transfer conducted from BRI Supply, Inc., Bank of America account #457042616678 to Western Alliance Bank Pioneer Title Agency, Inc., Escrow Trust account #8010382772 for $50,000.00.

9. On or about June 29, 2020, a wire transfer conducted from BRI Supply, Inc., Bank of America account #457042616623, to Western Alliance Bank Pioneer Title Agency, Inc., Escrow Trust account #8010382772 for $1,986,338.04.00.

10. On or about June 29, 2020, Dale and Kathryn Hipes purchased defendant property located at 12006 N. Oakhurst Way, Scottsdale, AZ 85254 for $2,050,000.00 in cash.

***Fraudulent Acts of Dale Lawrence Hipes***

11. In December 2019, a novel coronavirus, SARS-CoV-2 (the "coronavirus"), was first detected in Wuhan, Hubei Province of the People's Republic of China ("PRC") causing outbreaks of the coronavirus disease COVID-19 to spread globally. On January 31, 2020, the United States Secretary of Health and Human Services ("HHS") declared a national public health emergency under 42 U.S.C. § 247d as a result of the spread of COVID-19 to and within the United States. On March 11, 2020, the Director-General of the World Health Organization ("WHO") characterized COVID-19 as a pandemic. Due to the rapid spread of COVID-19 within the United States, on March 13, 2020, the President of the United States issued Proclamation 9994 declaring a national emergency beginning on March 1, 2020.

12. Guidance from the Centers for Disease Control and Prevention ("CDC") suggested person-to-person transmission most commonly happens during close exposure to a person infected with COVID-19, primarily via respiratory droplets produced when the

infected person coughs or sneezes. Droplets can land in the mouths, noses, or eyes of people who are nearby or possibly inhaled into the lungs of those within close proximity. Accordingly, the CDC issued guidance to health care providers recommending that they wear Personal Protective Equipment ("PPE") such as masks, to prevent the transmission of coronavirus by infected patients to healthcare providers.

13. The 3M N95 respirator mask was developed by 3M in 1972 and is one of nine filter classifications in the National Institute for Occupational Safety and Health (NIOSH) approval system, as an air-purifying, particulate respirator as a personal protection device designed to help reduce the wearer's inhalation exposure to certain airborne particulates. The 1860 model is a traditional cup shaped respirator whereas the 1870 model is a three-fold, flat panel respirator. Both the 1860 and 1870 have elastic headbands (latex free) and a malleable nose clip and foam strip to help provide a secure, customized fit for a broad range of face shapes and sizes.

14. In or around June 2020, Dale Hipes, CEO of BRI Supply, Inc., made representations that he could procure 3M masks for the state of Texas. Hipes claimed that as a 3M distributor he could deliver ten million masks in three days provided the purchaser made payment up front.

15. After agreeing to a price of $1.87 per mask, $16.65 million was wire transferred to an account controlled by Hipes for the purchase of nine million masks.

16. After failing to deliver, Dale Hipes agreed to return the $16.65 million, but only returned $12 million. Hipes continued to promise he would return the remaining funds, but as of August 1, 2020, Hipes ceased all communication with the individuals with whom he agreed to supply 3M masks.

*The Victim*

17. At the start of the COVID 19 pandemic, JD, a well-known philanthropist, offered to assist the state of Texas by making private funds available in the form of a $20 million line of credit for the immediate purchase of PPE, with the understanding that the state of Texas would reimburse JD in the future.

18. Having a long-term business relationship with JD, KS acted as the point person for the purchase of the PPE. KS routinely worked with the Texas task force to project manage various purchases for the state.

19. To acquire PPE for the State of Texas, KS worked with broker JK, owner and operator of HANSCOM K, Inc., a PPE brokerage business located in Illinois.

20. According to a search of the Illinois Secretary of State Corporations/LLC, HANSCOM K., Inc., File Number: 56761942, is a domestic corporation, incorporated March 18, 1992, with the State of Illinois.

21. HANSCOM K., Inc.'s Agent is TO. The officers are JK, President and JK, Secretary, all listed at 1250 S. Grove Avenue, STE 308, Barrington, IL 60010.

22. In or around April 2020, JK met Dale Hipes, CEO of BRI Supply, Inc., through TJ and CB, JK's local Arizona contacts.

23. Hipes informed JK and others that as a 3M distributor, he could acquire 3M masks. CB vouched for Hipes because Hipes rented warehouse space from CB in Scottsdale, Arizona.

24. According to the Arizona Corporation Commission, BRI Supply, Inc., Entity ID: 23075463, is a domestic for-profit (Business) corporation. Entity Status: Active, Formation Date: April 4, 2020, Business Type: Wholesale Trade. The listed Principals, Director: Dale L. Hipes, 9332 N. 95th Way, Ste B109, Scottsdale, AZ 85258; Officer: Nancy A. Countryman, 9332 N. 95th Way, Ste B109, Scottsdale, AZ 85258; and Chief Financial Officer (CFO): DD. Per articles of amendment, on or about October 1, 2020, the board of directors of BRI Supply, Inc., accepted the resignation of DD as CFO from BRI Supply, Inc.

25. BRI Supply Inc., place of business listed as 9332 N. 95th Way, Ste B109, Scottsdale, AZ 85258, incorporator Dale L. Hipes, April 4, 2020.

26. On or about April 13, 2020, Dale Hipes opened BRI Supply Inc., business checking account #457042616623 at Bank of America and listed Dale L. Hipes, DD and Nancy Anne Countryman as signers on the account.

27. On or about April 13, 2020, Dale Hipes opened BRI Supply Inc., business checking account #457042616678 at Bank of America and listed Dale L. Hipes, DD and Nancy Anne Countryman as signers on the account.

28. On or about April 15, 2020, Dale Hipes opened BRI Supply Inc., business checking account #457042636917 at Bank of America and listed Dale L. Hipes, DD and Nancy Anne Countryman as signers on the account.

29. Based on Hipes' representations that he could acquire 3M masks, KS ordered nine million 3M masks for a total purchase price of $16.65 million. Hipes promised KS delivery of nine million masks within three days.

30. JK, as HANSCOM K, Inc., acted as the broker by issuing a purchase order and wiring funds to an account designated by Hipes. Hipes told JK that the designated account was an escrow account to hold the funds. Once Texas received delivery of the masks, then the funds would be transferred to 3M directly. Based on those facts, JK was secure in wiring the funds.

31. Because Hipes required payment up front, approximately $16.65 million was wire transferred from JD Trust to Hipes' escrow account through broker HANSCOM K, Inc.

32. On May 6, 2020, a $980,000.00 FED Wire issued from Hanmi Bank HANSCOM K, Inc., account #500580488, to Bank of America BRI Supply, Inc., account #457042616623. Beneficiary Information: Invoice #050520A for 3M Mask N95 1860.

33. On May 26, 2020, a $15,670,000.00 FED Wire issued from Hanmi Bank HANSCOM K, Inc., account #500580488, to Bank of America BRI Supply, Inc., account #457042616623. Beneficiary Information: Invoice #052120 for 3M Mask N95 1860 Purchase.

34. On May 26, 2020, BRI Supply, Inc., Bank of America account #457042616678 received an online transfer for $693,958.00 from BRI Supply, Inc., Bank of America account #457042616623.

35. On May 26, 2020, three online transfers from BRI Supply, Inc., Bank of America account #457042616623 to BRI Supply, Inc., Bank of America account #457042636917 occurred as follows:

    a.    $550,000.00
    b.    $2,500,000.00, and
    c.    $9,999,000.00, totaling $13,049,000.00.

36. After several weeks, Hipes had not delivered any masks and it became clear to JK that Hipes could not fulfill the order. JK learned that Hipes did not hold a distributor agreement with 3M.

37. Due to Hipes' failure to deliver the masks, KS demanded Hipes return the full $16.65 million to JK.

38. On June 18, 2020, Hipes returned $12,000,000.00 of the $16.65 million by wire transfer from BRI Supply, Inc., Bank of America account #457042636917 to HANSCOM K, Inc., Hanmi Bank account #500580488.

39. When JK pressed Hipes about the remaining balance, Hipes made multiple excuses, including that the escrow account refused to release the funds, and that JK needed to talk to the BRI Supply Inc., CFO, DD.

40. When JK asked for a copy of the escrow agreement, Hipes refused to provide it.

41. JK learned that prior to incorporating BRI Supply Inc., in April of 2020, Hipes operated a Cannabidiol (CBD) business.

42. JK last spoke with Hipes on or about July 22, 2020, but recently learned that Hipes may have spent some of the missing funds on a new house and a car, and that Hipes recently moved BRI Supply Inc., under his mother Nancy Last Name Unknown (LNU). JK previously spoke with Nancy LNU, who claimed to have no knowledge of the missing funds.

43. After learning Hipes did not have a relationship with 3M, nor did he act as a distributor for 3M as he claimed, KS demanded full repayment of the funds.

44. KS continued attempts to collect the remaining funds, and Hipes promised to repay the balance on August 1, 2020.

45. Hipes did not return the funds on August 1, and reportedly no longer responds to texts, phone calls or emails from KS.

46. Hipes obtained $16.65 million through false representations and failed to deliver the contracted product. Instead of returning the unpaid balance of $4.65 million owed to KS, on or about June 29, 2020, Dale and Kathryn Hipes used $2,050,000.00 of the unpaid balance to purchase among other things, the defendant real property.

**FIRST CLAIM FOR RELIEF**

The defendant real property represents proceeds of, or property traceable to proceeds of, a violation of specified unlawful activity, including but not limited to wire fraud, 18 U.S.C. § 1343, and therefore is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

**SECOND CLAIM FOR RELIEF**

The defendant real property was involved in a transaction or attempted transaction in violation of a money laundering offense, 18 U.S.C. §§ 1956 and 1957, and therefore is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the United States of America prays that due notice be given to all parties, to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court deems just and proper, together with the costs and disbursements of this action.

Respectfully submitted this 16th day of December 2020.

MICHAEL BAILEY
United States Attorney
District of Arizona

*S/ Mark J. Wenker*
MARK J. WENKER
Assistant United States Attorney

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use <u>only</u> in the District of Arizona.

**The completed cover sheet must be printed directly to PDF and filed as an attachment to the Complaint or Notice of Removal.**

| | |
|---|---|
| **Plaintiff**(s): **United States of America** | **Defendant**(s): **Real Property Located at 12006 N. Oakhurst Way, Scottsdale, Arizona 85254** |
| County of Residence: Maricopa | County of Residence: Maricopa |
| County Where Claim For Relief Arose: Maricopa | |
| Plaintiff's Atty(s): | Defendant's Atty(s): |
| **Mark J. Wenker , AUSA**<br>**DOJ**<br>**40 North Central Avenue, Suite 1800**<br>**Phhoenix, Arizona  85004-4408**<br>**602-514-7500** | |

| | |
|---|---|
| II. Basis of Jurisdiction: | **1. U.S. Government Plaintiff** |
| III. Citizenship of Principal Parties<br>**(Diversity Cases Only)** | |
| Plaintiff:- | **N/A** |
| Defendant:- | **N/A** |
| IV. Origin : | **1. Original Proceeding** |
| V. Nature of Suit: | **690 Other** |
| VI. Cause of Action: | **civil action in rem, to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of property, real or personal, which constitutes or is derived from proceeds traceable to a violation of a specified unlawful activity, including but not limited to, wire fraud, 18 U.S.C. § 1343 and a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957.** |
| VII. Requested in Complaint | |
| Class Action: | **No** |
| Dollar Demand: | |
| Jury Demand: | **No** |

VIII. This case **is not related** to another case.

**Signature:** /s/ Mark J. Wenker

**Date:** 12/15/2020

**If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, save this form as a PDF and include it as an attachment to your case opening documents.**

Revised: 01/2014

**VERIFICATION**

I, Troy Cofer, hereby verify and declare under penalty of perjury that, I am a Special Agent for the Federal Bureau of Investigation, Phoenix Division, that I have read the foregoing Complaint for Forfeiture *In Rem* and know the contents thereof, and that matters contained in the Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed on this eighth day of December 2020.

_____
Troy Cofer, Special Agent
Federal Bureau of Investigation